IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER VAN
CORTLAND: CHAMBERS and
LOUIS EDWARD: DeBROUX, JR.,
as individuals in personal capacity
and *ex relatione* the United States of
America in qui tam capacity,

          Plaintiffs,

v.                                      1:09-cv-0100-WSD

GIBSON CHIROPRACTIC
CLINIC, P.C., in corporate capacity;
PATRICIA ANN GIBSON, in
personal capacity; ANN J.
HERRERA, in personal capacity;
and all other unknown complicitous
parties in personal capacity as their
identities may become known,

          Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Ann J. Herrera's ("Herrera") Motion for Summary Judgment [10].[1]

---

[1] On March 20, 2009, Plaintiffs filed a Petition to Extend Deadline to Answer or Otherwise Plead [12], in which the Plaintiffs requested an extension to respond to the motion for Summary Judgment ("Motion for Extension of Time"). This motion is **GRANTED**.

Plaintiffs Christopher van Cortland: Chambers and Louis Elward: DeBroux, Jr. (collectively, "Plaintiffs") filed their Complaint [1] in this matter on January 14, 2009. On March 2, 2009, Defendant Herrera filed her Motion for Summary Judgment. On May 27, 2009, the Court held a hearing in this and five other pending actions involving the same Plaintiffs and similar allegations.

## I. BACKGROUND

Plaintiffs bring this action against Defendant Herrera[2] claiming she committed various violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"). Plaintiffs allege that on July 24, 2008, they entered the parking lot of Gibson Chiropractic Clinic, P.C. ("Gibson") and found that the property had eleven (11) parking spaces, none of which were properly marked as handicapped parking spots. Defendant's Statement of Undisputed Material Facts ("DSUMF") at ¶ 2.[3] Plaintiffs also allege that there were no ramps or railings

---

[2] Plaintiffs have agreed to dismiss with prejudice all of their claims against Defendant Gibson Chiropractic Clinic, P.C., and Defendant Patricia Ann Gibson. See Stipulation of Dismissal with Prejudice [5].

[3] A movant's statement of material facts is deemed admitted unless the respondent directly refutes the movant's fact with specific citations to evidence, states a valid objection to the admissibility of the movant's evidence, or points out that the record evidence does not support the movant's factual assertion. Local Rule 56.1B(2)(a)(2), NDGa. "The court will deem the movant's citations supportive of its facts unless the respondent specifically informs the court to the contrary in the response." Id. 56.1B(2)(a)(3). Defendant Herrera submitted a Statement of Undisputed Material Facts ("DSUMF") with her summary judgment motion.

providing handicapped access to the entrances of the building.  Id. at 3.  Plaintiffs claim that Herrera's actions have deprived them of "the intangible right of honest services."  Complaint at ¶ 18.

On September 1, 2008, Plaintiffs sent a letter to Dr. Patricia Gibson enclosing photographs of these alleged violations.  Letter dated September 1, 2008 from Christopher van Cortland Chambers and Louis DeBroux, Jr. to Dr. Patricia Gibson.  Plaintiffs demanded the building and parking lot be brought into compliance with the ADA, and demanded over $5,000 to reimburse their "expenses."  Id.  Plaintiffs subsequently sent a second undated letter to Dr. Gibson, threatening to file a federal lawsuit if she did not comply with the demands of their first letter.  Plaintiffs also claimed that the U.S. Attorney's Office would seek an indictment against Dr. Gibson for her alleged "violation of 18 U.S.C. 1346, 'deprivation of the right of honest services.'"  Second Letter from Christopher van Cortland Chambers and Louis DeBroux, Jr. to Dr. Gibson.  On September 24, 2008, Herrera, as counsel for Gibson Chiropractic and Dr. Gibson, sent a letter to Plaintiffs stating she reviewed and discussed their two letters with local and federal officials.  Letter of September 24, 2008 from Herrera to Plaintiffs.  Herrera opined that she did not believe Plaintiffs had any basis for their claims, and she also stated

---

Plaintiffs have not responded or refuted the DSUMF, and to the extent the facts are supported by the record, they are deemed admitted.

3

that she believed Plaintiffs' letters constituted harassment and attempted extortion. Id. Finally, she offered for herself and Dr. Gibson to meet with Plaintiffs to discuss Plaintiffs' ADA concerns. Id.

## II. DISCUSSION

Plaintiffs claim that Herrera's personal liability stems from her position as the corporate secretary for Gibson Chiropractic Clinic, P.C., the corporate entity which owned the building. Specifically, Plaintiffs claim that Herrera is involved in the management of the operations of Gibson as its legal counsel, and that she had a fiduciary duty to make sure Gibson was in compliance with the standards required by the ADA. Defendant Herrera moves for summary judgment on the grounds that, as the corporate secretary and outside counsel for Gibson, she has no ownership interest, discretion, or control over the corporation or premises, and thus she cannot be held personally liable under the ADA.

### A. The Standard on a Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations omitted).

    B.    Analysis

The Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA"), is comprehensive legislation which addresses discrimination against disabled individuals. The Act has three sections: Title I regulates discrimination in the workplace; Title II prohibits discrimination by public entities; and Title III prohibits discrimination by private entities in places of public accommodation. Title III applies in this litigation.

    Title III provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182. The Eleventh Circuit has not directly addressed whether individual liability is precluded for violations of Title III.[4] The legislative history of the act reveals that the original bill did not identify the regulated identity; the language "any person who owns, leases (or leases to), or operates a place of public accommodation" was added later to restrict the scope of liability. See Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1168 n. 8 (11th Cir. 2003).

It is undisputed that Defendant Herrera does not own or lease the building. DSUMF at ¶ 5. Thus for Herrera to be held individually liable, under the plain terms of the statute she must be found to operate the premises of Gibson Chiropractic Clinic, P.C.

The term "operates" is not defined by the statute. Using the well-established canons of statutory construction, the starting point for statutory interpretation is the language of the statute itself. United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999). Courts are to assume that words in a statute are used and interpreted based on their common and ordinary meaning. Id. In the context of the

---

[4] The Eleventh Circuit has held that individual liability is precluded under Titles I and II of the ADA, but that it is not precluded for violations of the ADA's anti-retaliation provision where the act or practice opposed by the plaintiff is made unlawful by the ADA provisions concerning public services. Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007); Emmett v. Walker, 2008 WL 2755848, at *5 (S.D. Ga. July 15, 2008) (citing Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)).

statute here, to "operate" means "to bring about, effect," "to cause to function: work," or "to put or keep in operation." See http://www.merriam-webster.com/dictionary/operate.

The Fifth and Ninth Circuits also have defined "operates" in the context of Title III of the ADA under its ordinary and common meaning. The two appellate courts interpreted "operates" in the context of Title III to mean "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2004) (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir. 1995)).[5]

Applying these standards, it is clear that Defendant Herrera did not control or operate the premises, and she was not in a position to control or operate the corporation. The evidence is undisputed that Herrera is not involved in the

---

[5] Courts which have found individuals personally liable under Title III have made the initial necessary finding that those individuals controlled the actions or directed the affairs of the corporate entity which owned the public accommodation, or had the power to facilitate any necessary accommodation. See, e.g., Coddington v. Adelphi Univ., 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999) (noting Congressional intent to exclude individual liability under Title III of the ADA and finding the scope of "operates" to be limited to those individuals who have the power to facilitate any necessary accommodation); United States v. Morvant, 843 F. Supp. 1092 (E.D.La. 1994) (finding individual defendant dentist liable under Title III despite operating his practice as a corporation since he was the sole owner, director, and president of the corporation and was charged directly with refusing treatment in violation of the ADA).

management or the operations of Gibson. DSUMF at ¶ 5; Affidavit of Ann J. Herrera at ¶ 3. Herrera has stated that she has no ownership interest, discretion, direction, power, or control over Gibson or the premises where Gibson is located, and Plaintiffs have not presented any evidence to the contrary. DSUMF at ¶ 5; Herrera Aff. at ¶ 3. Simply stated, Herrera was not in a position to cause any of the alleged ADA violations or to implement any of the accommodations Plaintiffs allege were absent, and she cannot be held personally liable for any alleged ADA violations of Gibson Chiropractic Clinic, P.C.[6]

Finally, Plaintiffs also appear to vaguely allege that Herrera attempted to threaten or intimidate them from prosecuting their claims in her September 24, 2008 letter. A review of the letter does not support Plaintiffs' allegation, and there does not appear to be any actionable claim based on the letter or Defendant Herrera's actions.

---

[6] Plaintiffs also appear to claim that they have a *qui tam* action for damages. The Court already has found Defendant Herrera cannot be held personally liable for any alleged ADA violations. In addition, there is no common law right to bring a *qui tam* action. Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc., 524 F.3d 1229, 1233 (11th Cir. 2008). The Supreme Court has recognized four extant *qui tam* statutes, none of which apply here. See id.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ann J. Herrera's Motion for Summary Judgment [10] is **GRANTED**.

**SO ORDERED** this 29th day of May, 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE